Golfview Manor, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employment Security, Respondent.

Argued February 7, 1980, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

*R. Scott Shearer*, with him *Peter J. Ressler, Shearer, Mette & Woodside*, for petitioner.

*Robert E. Chernicoff*, with him *Stephen B. Lipson* and *Herbert W. Hoffman*, Assistant Attorneys General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., May 13, 1980:

This is an appeal by Golfview Manor from the Office of Employment Security's[1] determination and assessment of unemployment compensation contributions for the use of the Unemployment Compensation Fund.[2] We affirm.

---

[1] Formerly named the Bureau of Employment Security.

[2] *See* generally, Section 601 of the Pennsylvania Unemployment Compensation Act, Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended*, 43 P.S. §841 et seq.

Golfview Manor owns and operates 19 restaurants and utilizes a number of waitresses who are paid an hourly wage equal to one-half the minimum wage. Tips and gratuities are paid directly to the employees by customers, and retained by them. Though the employee's manual distributed to new workers instructs tipped employees to report monthly tips over $20.00 on the back of their time cards, none adhere to the procedure. However, Golfview Manor does report employees' tip income to the Federal Government in an amount corresponding to the difference between the hourly wage actually paid (one-half of minimum wage, and the required minimum wage). Thus, the relevant, partial accounting of the tips in question was reported on Federal Forms 941 and the W-2 issued to Golfview Manor employees.

The Office of Employment Security thereafter issued its Notice of Assessment, dated May 23, 1978, to Golfview Manor for failing to include these tips used for the purpose of meeting minimum wage requirements in their quarterly contribution reports.[3] After an Examiner's Hearing on Golfview Manor's Reassessment Petition, a denial was ordered by the Pennsylvania Department of Labor and Industry:[4] "Tip income computed in qualifying Golfview Manor, Inc., the Petitioner, to meet Federal minimum wage standards shall also be included as wages within the definition of that term for purposes of an employer's contribution and an employee's benefits under the Pennsylvania Unemployment Compensation Law."

---

[3] The Department's assessment for unemployment compensation contributions due and owing for the use of the Unemployment Compensation Fund was in the amount of $106,275.00, together with interest of $12,703.50, this accounting for the 1976 and 1977 quarterly and 1978 first quarter assessments.

[4] As was the case below, the parties have agreed to limit themselves to the question of liability, whereas the amount of liability will be determined, if necessary, at a later date.

The present controversy turns upon a reading, interpretation, and application of Section 4(x)(6), 43 P.S. §753(x)(6), of the Pennsylvania Unemployment Compensation Law:

> (x) 'Wages' means all remuneration . . . paid by an employer to an individual with respect to his employment except that the term 'wages for the purpose of paying contributions *shall not* include:
>
> . . . .
>
> (6) Notwithstanding any other provisions of this subsection, wages *shall* include all remuneration for services with respect to which a tax is required to be paid under any Federal law imposing a tax against which credit may be taken for contributions to be paid into a state unemployment fund or which as a condition for full tax credit against the tax imposed by the Federal Unemployment Tax Act are required to be included under this act. (Emphasis added.)

The initial problem exhibits a classic example of nonconforming amendatory legislation, obvious even upon a casual reading of Subsection (x)(6). Enacted in 1937 to define the term "wages," Section 4(x)(1) to (5) was amended in 1949 to add paragraph (6), and in 1951 to add paragraphs (7) through (9).[5] The inconsistent reading of "shall not" and "shall" in Subsection (x)(6) has been untouched by the courts until today.

Subsection (x) clearly labels all payments made by employer to employee for inclusion as wages. Paragraph (6), which should logically read as an exclusion, not so clearly includes as wages payments for services upon which a federal unemployment tax is to be paid under federal law. Golfview Manor claims that strict

---

[5] *See* Historical Note, Section 4(x)(6), 43 P.S. §753(x)(6).

construction demands *both* the subsection (x) and paragraph (6) requirements be met to enable an assessment against tips as wages. On the other hand, the Department contends that meeting *either* requirement is sufficient to allow an assessment. We agree. After reading the statute in light of its legislative history, the logical interpretation views paragraph (6) as an afterthought wage inclusion by the legislature, such that the "either" construction is warranted. Accordingly, we will examine each provision.

### Subsection (x)

In opposition to subsection (x), Golfview Manor proposes that tips paid directly to employees by customers do not constitute wages according to this Court's decisions in *Cox's Restaurant, Inc. v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 165, 392 A.2d 335 (1978), and *Unemployment Compensation Board of Review v. Churchill Valley Country Club,* 19 Pa. Commonwealth Ct. 430, 338 A.2d 738 (1975).

This Court held that by construing "wages" in the broadest possible manner, Churchill Valley tips could not be considered within the definition when passed directly from patron to employee or when employer acts merely as a direct funnel or "constructive trustee" for such gratuities. However, tips would be included in a wage computation for unemployment compensation purposes when the tip was either a service charge or the employees exercised significant control over their administration, such that the employees were prevented from receiving the full due amount.[6]

---

[6] In *Unemployment Compensation Board of Review v. Churchill Valley Country Club,* 19 Pa. Commonwealth Ct. at 436 n. 10, 338 A.2d at 741 n. 10, we held that "deductions, if any, for social security or any other taxes or reasonable charges may rightfully prevent a claimant's receiving 'exactly' what was tipped without converting such moneys into 'wages.' "

*Churchill Valley Country Club, supra,* at 434, 338 A.2d at 741. In the present case, uncontroverted evidence reveals that Golfview ·Manor neither exercised control over employee's gratuities nor prevented them from receiving the exact tipped amount. However, we are faced with a new and added twist.

The Department counters that subsection (x) cannot be so strictly construed where an employer pays one-half minimum wage, utilizes tips as a credit toward its minimum wage obligation, and then refuses to acknowledge the unemployment compensation fund obligation for the amount between salary and minimum wage by claiming that the gratuities were not paid by employer to employee.[7] Taking into account the effect of Golfview Manor's attempted scheme on employees, we must agree.

Pennsylvania employers must pay a yearly set percentage of overall employment wages into the unemployment compensation fund.[8] *See* Section 301(a)(1), 43 P.S. §781(a)(1). "Wages" have clearly been defined for the purposes of subsection (x) as *all remuneration paid by employer to employee.* See Section 4 (x), 43 P.S. §753(x). However, underlying the Department's argument, this discussion, and our decision is the statutory mandate that every employer pay a fixed hourly minimum wage to each of his employees

---

[7] We are only concerned here with those tips and gratuities used by employers to meet the minimum wage requirements. Since the *Churchill Valley Country Club* and *Cox's Restaurant* cases found that the amount of tips which brought total wages *above* the minimum wage level were properly excluded from "wages," we are neither confronted with nor must address this issue.

[8] The major purpose of the Unemployment Compensation Fund is to support the basic levels of the Unemployment Compensation Law, to help combat economic security due to involuntary unemployment, and generally to alleviate such problems for the health, morals and welfare of the people of this Commonwealth. *See generally,* Section 3, 43 P.S. §752.

in accordance with the Pennsylvania Minimum Wage Act.[9] The Minimum Wage Law clearly recognizes tips as an acceptable source for monies to meet the set percentage for an employer's minimum wage obligation, provided the employee knows of the practice and directly receives these tips.[10]

As a Pennsylvania employer, Golfview Manor is bound to provide in some way for the payment of minimum wages in accordance with the Minimum Wage Act "wages" definition, and to pay into the unemploy-

---

[9] *See* Section 4(a) of The Minimum Wage Act of 1967, Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. §333.104(a). The Act was passed to combat wages which were unreasonably low and not fairly commensurate with the value of services rendered. *See* Section 1, 43 P.S. §333.101. Note also that minimum wage is chiefly subject to Section 6 of the Fair Labor Standards Act of 1938, 29 U.S.C. §206.

[10] Section 3(d) of the Minimum Wage Act of 1967, 43 P.S. §333.103(d), provides in pertinent part:

In determining the hourly wage of a tipped employe, the amount paid such employe by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of . . . forty percent of the applicable minimum wage rate, Provided, that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employe. The previous sentence shall not apply with respect to any tipped employe unless:

(1) Such employe has been informed by the employer of the provisions of this subsection;

(2) All tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect; where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe; except that this subsection shall not be construed to prohibit the pooling of tips among employes who customarily and regularly receive tips.

ment compensation fund in accordance with the Unemployment Compensation Act "wages" definition.[11] An employer cannot take advantage of the Minimum Wage Act's allowance of tip inclusion to meet its minimum wage obligation on the one hand, and then disregard its corresponding unemployment compensation fund commitment on the other. We can only conclude that the Unemployment Compensation Act's use of the term "wages" presupposes the required minimum wage, regardless of whether salary *and* tips are used to comprise that amount, such that the department was warranted in its assessment determination.

### Paragraph (6)

Addressing this second provision, we are faced with the question of whether the tips are taxable by the Federal Unemployment Tax Act (FUTA),[12] thereby rendering said tips taxable under the Pennsylvania Unemployment Compensation Law pursuant to paragraph (6) of Section 4(x). Since the tips paid to Golfview Manor's employees by customers would also be taxable under paragraph (6) if taxable by FUTA, we must examine those requirements.

The Federal Unemployment Compensation Tax is a percentage excise tax on total wages imposed by FUTA on every employer for each employee in a calendar year. *See* 26 U.S.C. §3301. Though the statute makes no reference to tips or gratuities,[13] Internal Revenue Regulations provide that "tips or gratuities paid directly to an employee by a customer of an employer, and not accounted for by the employee to the

---

[11] Of course, our decision here is not applicable to those classes of employees excluded from minimum wage payment, pursuant to Section 5 of the Minimum Wage Act, 43 P.S. §333.105.

[12] *See* Federal Unemployment Tax Act, 26 U.S.C. §3301 et seq.

[13] Note that "wages" for FUTA purposes is defined at 26 U.S.C. §3306(b) without any reference to tips or gratuities.

employer'' are excluded from the wage definition. *See* Treas. Reg. §31.3306(b)-1(j)(3). Though not binding, Rev. Rel. 66-369, 1966-2 C.B. 451, further defines the tax on tips imposed by FUTA:

> [T]he Federal Unemployment Tax Act applies to tips received by an employee in the course of his employment by the employer, to the extent that tips (1) are reported in writing by the employee to the employer, and (2) are taken into account by the employer to the extent permitted in determining the employees' compensation under the State minimum wage law. For this purpose, on or after January 1, 1966, tips should be deemed received by the employee only to the extent that the employee reports the tips in writing to the employer.

Therefore, tips reported to employers in writing are wages to the extent they are taken into account in determining the employees' compensation under the federal minimum wage law. *See* Rev. Rul. 78-335, 1978-2 C.B. 254.

The record tells us that Golfview Manor takes up to a 50% credit on tips in meeting its minimum wage obligation. However, we are faced with whether the failure of Golfview's employees to report their tips in writing is a sufficient ground to avoid its federal tax obligation under these circumstances. We must answer in the negative.

The circumstances are of vital consideration here. Although the employee manual required the reporting of monthly tips received in excess of $20.00 on their time card, Golfview Manor neither apprised its employees of the Internal Revenue Regulations nor encouraged such written reports. In fact, the recorded testimony of a number of employees reveals that they were led to believe that reporting was unnecessary since an estimation of tips was made on their pay

stubs up to the amount of minimum wage. Accordingly, we must again conclude that the utilization of tips as a 50% credit toward minimum wage obligations, because of the reporting atmosphere, will not allow Golfview Manor to escape liability under the Unemployment Compensation Law.

Accordingly, we

### ORDER

AND Now, this 13th day of May, 1980, the order of the Office of Employment Security, Department of Labor and Industry, dated December 12, 1978, that the Petition for Reassessment of Petitioner, Golfview Manor, Inc., be denied, is hereby affirmed.

President Judge BOWMAN did not participate in the decision in this case.